## LE BLANC v. UNITED STATES.
### No. 6768.

Circuit Court of Appeals, Fifth Circuit.
June 2, 1933.

Claude L. Johnson, of New Orleans, La., for appellant.

E. E. Talbot, U. S. Atty., and Jno. W. Harrell, Asst. U. S. Atty., both of New Orleans, La., for the United States.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is another belated suit on a war risk insurance policy, filed twelve years after the soldier's discharge. No premiums have been paid on the policy, no claims made under it in all that time. Tried to a jury, it resulted in a verdict for the United States. Appellant comes here relying for reversal on four assignments of error, all directed to the giving or refusal of charges.

He complains that the court erred in refusing the plaintiff's motion for a directed verdict. That it erred in refusing to charge the jury that "in the consideration of these regulations and the interpretations of the war risk insurance contract, and in measuring the quantum of evidence necessary to sustain a possible verdict for the plaintiff, you must bear in mind the remedial purpose of the World War Veterans' Act which the courts have repeatedly held should be liberally construed in favor of the veterans." (3) That there was error in its refusal to charge the jury in the words of section 200 of the World War Veterans' Act (38 USCA § 200) as follows:

"You are instructed that under the law every enlisted man, or any other member of the active service under the War Department or Navy Department, who was discharged prior to July 2, 1921, and who was in active service on or before November 11, 1918, shall be conclusively held and taken to have been in a sound condition when examined, accepted and enrolled for service, except as to defects, disorders and infirmities made of record in any manner by proper authority of the United States at the time or prior to inception of active service. The law further provides that any ex-service man who is shown to have had prior to January 1, 1925, an active tuberculosis disease which developed a ten per cent degree of disability, shall be presumed to have acquired his disability in such service between April 6, 1917 and July 2, 1921, and said presumption shall be conclusive in case of active tuberculosis diseases."

(4) Complaint is made of the court's action in giving at defendant's request, a special charge to the effect that the presumption of service-connected disability, prescribed by section 200, applies only to compensation, and not to war risk insurance cases. This is the state of the proof.

Plaintiff testified that well and strong when in May, 1918, he entered the service, he was later taken sick, remaining so until his discharge in August, 1918. That upon his arrival home he was compelled to keep to his bed for three or four months. That he was unable to continue his former occupation of freight handler, finding the work too heavy. That he then worked in the car department of the Southern Pacific, but was unable to carry on continuously. That offered voca-

tional training and given employment in the machine shops of the Southern Pacific, he worked there for a while. Losing too much time as a result of his physical condition, he was compelled to give up this work and was then given vocational training as an upholsterer. While engaged in the latter occupation, in March, 1923, he was examined by Dr. Bel who made a diagnosis of active pulmonary tuberculosis. That remaining under Dr. Bel's treatment and continuing to try to carry on his work with the Vocational Training Bureau, he worked off and on until February, 1926, when he was forced by his tubercular condition to discontinue. That since that time he has been unable to do any work with any continuity, and that at the time of the trial he was suffering from active tuberculosis.

Dr. Bel testified that he examined the plaintiff in March, 1923, and again in April, 1923, and found him to be suffering from active tuberculosis of the lungs. That plaintiff had continued under his treatment until July, 1930. That his lungs were still in bad condition in 1930, the tuberculosis still active. That he considered the plaintiff totally disabled from following continuously any substantially gainful occupation, and the treatment he would prescribe would be absolute rest, fresh air, diet, and a good tonic. He stated he could not say how long this condition had existed prior to March, 1923.

Dr. Davidson, a specialist in lung diseases, testified that he had known plaintiff since 1926; that he had had active pulmonary tuberculosis since that time. That the disability of plaintiff was total, and that plaintiff was suffering at present from active tuberculosis and chronic mitral carditis. That he considered that the disability would continue for some time with a tendency toward permanent disability, and that his condition would be aggravated and grow worse if he went back to work.

Fred Cunningham, connected with the Veterans' Administration during 1921, testified that he had known plaintiff while working in the Vocational Training School; that at that time his health was not very good; and that he lost some time from his work, he did not know how much, on account of sick leave.

Francis Elliott, a witness for plaintiff, testified that plaintiff did not work regularly in the Southern Pacific shop and was always complaining of being sick. That he did not remember how much time he had lost but he had lost a good deal.

Kessinger, plaintiff's witness, one of the employees in the Southern Pacific shop, said plaintiff appeared to be delicate and did not work steadily. That he had lost time while working under witness, and that he had occasion to go after plaintiff about this. He further stated that the plaintiff was a good worker but could not keep up to the standard. Two other witnesses testified that they had worked with and had known plaintiff since February, 1919, and that they had known him to be sickly and not able to work regularly, while another witness testified to the same effect as to the time since 1922. Plaintiff's father testified that when he returned from military service it was to go to bed, and that for about two years afterward he was under the care of a doctor most of the time in bed.

Neither plaintiff nor defendant offered his army medical record. Defendant offered the testimony of four doctors and one lay witness. Dr. Voss testified to having examined the plaintiff in 1920 finding a heart condition, with too rapid heart action which he diagnosed as "probably neuro-circulatory asthenia" but no lung condition. Dr. Berenger testified to an examination in June, 1921, and a diagnosis then of mild tachycardia; that no complaint was made of plaintiff's lungs and no examination of them; that witness did not consider plaintiff totally disabled. That after the examination he decided to send him to the hospital to determine the cause of the rapid heart action. That he examined the patient again in 1927 and 1928 and on each occasion this tachycardia condition was found. Dr. Otis, a neuro-psychiatry specialist testified that he examined plaintiff in 1924 and did not find him suffering from any mental or neurotic disorder. Dr. Levy, house physician for Holmes Company, testified that when plaintiff came to work for that company in 1924 he gave him a casual examination, finding nothing abnormal about his lungs and his heart fairly normal. That he complained of no trouble. That he recommended him for group insurance. That he believed if there had been any serious tubercular condition at that time he would have found it. That upon re-examination in 1925, he found that he had gained weight, his temperature was normal, and he had no complaint. That he re-examined him in 1926, at which time trouble was found, including loss of weight. That he would say that plaintiff did not have tuberculosis to a marked degree prior to the 1926 examination.

Henry Villarubia testified that in about 1923 or 1924 he worked with plaintiff for about a year at the Maison Blanche Company,

and that during that time the plaintiff did not complain of being sick and appeared to be in good health.

Defendant offered an application of plaintiff dated December 26, 1920, for reinstatement of $2,000 of his original term insurance. In that application he stated that he was in good health. In answer to the printed questions whether he had been treated for lungs, heart, or blood, plaintiff stated only that he had been treated for his heart while in the service. Attached to the application was the certificate of Dr. Odom, his family physician, that his physical and mental condition was good; that after examination he had found no abnormality of his lungs, heart, or nervous system and that he would recommend him for insurance. Defendant also offered an application for compensation, dated February 6, 1920 in which plaintiff stated that his disability was heart trouble, and also stated that he had been working as a machinist's helper at $103 per month since 1918.

In Meyer v. U. S. (C. C. A.) 65 F. (2d) 509, and Keelen v. U. S. (C. C. A.) 65 F.(2d) 513, this day decided, cases in which appellants having suffered adverse jury verdicts were complaining of the refusal of the court to direct a verdict in their favor, we pointed out the heavy burden resting on one suing as plaintiff sues here, twelve years after his discharge from the service, to make a case demanding a verdict in his favor. This case does not, any more than those did, demand such verdict. The district judge was right in denying plaintiff's motion to direct. He was also clearly right in refusing plaintiff's requested special charges. The first, a combination of generalities upon the duty of courts, in construing war risk insurance contracts, acts and regulations, and of juries in determining the state of the proof in such cases, to look favorably upon plaintiff's claims, had no place in the charge. To the extent that it was applicable at all to the jury's functions, it wrongly advised them that they should use a different yardstick in this kind of case for measuring the quantum of proof required, from that used by them in other cases. This is not the law. Suits on contracts, these, the jury's province in them is the same as in any other suit and plaintiff may not have a verdict here unless he makes his case by a preponderance of proof any more than he may have a verdict in any other kind of suit. U. S. v. Martin (C. C. A.) 54 F.(2d) 554.

The requested charge on the statutory presumption that plaintiff's disability was service-connected was misleadingly inappropriate. For the reasons given in Meyer v. U. S. (C. C. A.) 65 F.(2d) 509, for overruling a similar assignment, we overrule this one. There remains only plaintiff's exception to and assignment of error on the giving of the defendant's special charge limiting the scope of the statute to compensation cases. The only exception taken by plaintiff to the charge was with reference to "the application of the presumption being only to compensation, and not to insurance, cases." The charge was not otherwise objected to. We thus are brought directly to the question whether the presumption fixed by section 200 as amended in 1930 [1] extends to war risk insurance cases. The charge complained of strictly limited the scope of the statute to compensation cases. We think it rightly limited it. When it is considered that the issue in war risk cases is not when did partial disability accrue, but when permanent and total disability, and that the section, while specifically dealing with compensation claims, neither mentions war risk cases, nor makes reference to this character of disability, it would seem to be a forced and unreal, a pointless construction, which would declare the statute applicable in war risk cases as to the fact of some service disability, but without bearing upon the then extent of it. One district judge in a circuit which holds that the 1926 amendment did extend the statute to war risk cases, undertook to give the statute point and make it effective by construing it as requiring him, when he found plaintiff totally disabled on January 1, 1925, to conclusively presume that disability to this same extent had been acquired while in service, and had continued ever since, only to have his constructive efforts nullified in the Circuit Court of Appeals. U. S. v. Nolan, 57 F.(2d) 190, that court finding

[1] Section 200, Act of 1924, amended by Act of 1930 (38 USCA § 471):

"For * * * disability, resulting from * * * disease contracted in the military * * * service on or after April 6, 1917, and before July 2, 1921, * * * by any * * * enlisted man * * * the United States shall pay to such * * * enlisted man * * * compensation as hereinafter provided. * * * That for the purposes of this section and section 515 [304] of this title [the 1926 Amendment read 'for the purposes of this Act'] every such * * * enlisted man * * * who was discharged * * * prior to July 2, 1921 * * * shall be conclusively held and taken to have been in sound condition when examined, accepted and enrolled for service, except as to defects, disorders or infirmities made of record: * * * Provided, That an ex-service man who is shown to have, or if deceased, to have had, prior to January 1, 1925 * * * an active tuberculosis disease * * * developing a 10 per centum degree of disability or more * * * shall be presumed to have acquired his disability in such service between April 6, 1917, and July 2, 1921 * * * and said presumption shall be conclusive in cases of active tuberculosis disease."

that the presumption applies as to the source and time of acquiring a disability; that it did not undertake to fix its degree, extent or permanence. C/f U. S. v. Le Duc (C. C. A.) 48 F.(2d) 789, 795.

Because the amendment of 1926 (44 Stat. 793) changed the words "purposes of this section" to "purposes of this act" some of the circuit courts gave that amendment limited application to war risk cases. U. S. v. Le Duc (C. C. A.) 48 F.(2d) 789; Brandaw v. U. S. (C. C. A.) 35 F.(2d) 181; Glazow v. U. S. (C. C. A.) 50 F.(2d) 178; U. S. v. Winkler (C. C. A.) 52 F.(2d) 369. Others have persistently limited the section to compensation cases. U. S. v. Searls (C. C. A.) 49 F.(2d) 224. No case has, however, been cited to us, we have found none, giving the section as it read in 1924 and reads under the 1930 amendment, application to other than compensation cases. Elbag v. U. S., 48 F.(2d) 281 (D. C. Mass.); Davis v. United States, 57 F.(2d) 871 (D. C. E. D. Va.)

The judgment is affirmed.