### UNITED STATES v. POLLOCK.

#### No. 7134.

Circuit Court of Appeals, Fifth Circuit.

Feb. 7, 1934.

W. C. Pickett, Sp. Asst. to Atty. Gen., George Earl Hoffman, U. S. Atty., of Pensacola, Fla., and Geo. W. Burke, Atty., Veterans' Administration, of St. Petersburg, Fla., for the United States.

Philip D. Beall, of Pensacola, Fla., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action brought by the appellee in July, 1932, on a war risk insurance policy issued in June, 1918, and which, by the discontinuance of the payment of premiums, ceased to be in force in August, 1918. There was judgment in favor of the appellee following the denial of a motion to direct a verdict against him. Appellee, who previously was a farm laborer, entered the Army in April, 1918, and was honorably discharged therefrom on August 10, 1918, following the report of a Board of Medical Officers, which showed that he was unfit for service as a soldier because of valvular heart disease, mitral stenosis, and that "in view of occupation," he was disabled from earning subsistence to the extent of one-fifteenth. The following was shown by the evidence: While appellee was in the Army and continuously thereafter he had a heart trouble or disease which to some extent impaired his capacity for strenuous and prolonged physical exertion. Upon his return from the Army appellee in August, 1918, went to work on the farm of his former employer and worked there until Christmas of that year, receiving $1 to $1.25 a day. Appellee testified that when he first came back he plowed for a while but did not plow long, for the plowing season was about over in August, and then he got the lot job, in which he fed and milked the cows, tended the lot, and helped the white folks around the house; that he did not work every day until he got that lot job; that two or three days a week was all he could make plowing. Ap-

pellee worked as a laborer for a railroad company from the latter part of January, 1919, to the month of May, 1921, receiving from $1.60 to $2 a day. Some days during that time he did not work, but he worked during a substantial part of each month during the period of his employment by the railroad company. After he left that employment he worked for a veneer company, receiving $3 a day, and he stated that he was off about half the time during the eight or nine months he worked for that company. Several physicians were witnesses for the appellee. Dr. Baltzell was the first physician who was consulted by the appellee after the latter's return from the Army. This occurred in April, 1919. Dr. Baltzell testified as to that examination and as to his only later examination of the appellee, which was made during the week preceding the trial. He stated that he could not tell whether or not, when he made the examination in 1919, appellee was able to follow substantially gainful occupation with reasonable regularity. The other physicians who were witnesses for the appellee testified as to examinations of the appellee made at sundry times in years subsequent to 1919. No physician testified that he was of the opinion that at or about the time the policy sued on lapsed the appellee was totally disabled, or that in any examination of the appellee he discovered anything from which it reasonably could be concluded that in August, 1918, appellee's condition was such as to render it impossible for him to follow continuously any substantially gainful employment; and no lay witness testified to any fact furnishing a substantial basis for such a conclusion.

The burden was on the appellee to prove that he became totally and permanently disabled while the policy was in force. Appellee's own testimony indicated that during several months in the latter part of the year 1918 he was continuously engaged in a substantially gainful occupation, the lot job, which did not involve a risk of seriously impairing his health or aggravating the heart ailment from which he suffered, and that during several years following his relinquishment of that job he was engaged, except when he was disabled by temporary illness, in other occupations, followed with substantial continuity for several successive months at a time, and got the benefit of successive increases in wages. The facts so deposed to, coupled with the fact of appellee's delay of nearly fourteen years before bringing suit, made it incumbent on him to produce clear and convincing evidence that he

was totally and permanently disabled before the policy lapsed. Lumbra v. United States, 54 S. Ct. 272, 78 L. Ed. ——; Wise v. United States (C. C. A.) 63 F.(2d) 307; United States v. Alvord (C. C. A.) 66 F. (2d) 455; White v. United States (C. C. A.) 53 F.(2d) 565. Instead of the evidence produced to support the asserted claim of appellee that he had suffered total permanent disability before the policy lapsed having the qualities of clearness and persuasiveness required in the circumstances disclosed, we are of opinion that it lacked any substantial tendency to support that claim.

The refusal to direct a verdict for the United States was erroneous. Because of that error, the judgment is reversed.