## O'QUINN v. UNITED STATES.

### No. 7105.

Circuit Court of Appeals, Fifth Circuit.
April 27, 1934.

K. Hundley and J. M. Shevnin, both of Alexandria, La., for appellant.

Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La., and Fendall Marbury, Atty., Dept. of Justice, of Washington, D. C.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from a judgment in favor of the defendant, appellee herein, in a suit, brought in February, 1932, on a war risk insurance policy which, by the payment of premiums, was not kept in force after the month of January, 1919. The rulings assigned as errors are the action of the court in permitting the appellee, during the trial, to file an amendment to its answer to appellant's petition, the admission of testimony over objection thereto by the appellant, and the granting of a motion, made upon the conclusion of the evidence, that a verdict in favor of the defendant, appellee here, be directed.

After the introduction of appellant's evidence in chief was concluded in the trial before a jury, the court, over the objection of the appellant, permitted the appellee to file an amendment to its answer to appellant's petition, which amendment alleged that, prior to appellant's enlistment in the forces of the United States on June 1, 1918, appellant was suffering from varicose veins in the right leg. It was within the discretion of the court to allow the appellee to amend its answer, and the action of the court in allowing the amendment is not subject to review unless in doing so the court grossly abused its discretion. 28 USCA § 777; Gormley v. Bunyan, 138 U. S. 623, 11 S. Ct. 453, 34 L. Ed. 1086; Ellerd v. Griffith (C. C. A.) 29 F.(2d) 402; Tway v. Seneca Motor Car Co. (C. C. A.) 284 F. 265. The following was paragraph 5 of appellant's petition:

"That during the time petitioner was in said military service of the United States of America and while said policy or certificate was in full force and effect in all of its terms and provisions, petitioner became totally and permanently disabled by reason of the following diseases, ailments and injuries:

"Varicose veins of the right leg coupled with chronic Phlebitis becoming acute after exercising said limb, superinducing alarming symptoms with high temperature."

The allegations of that paragraph were denied by appellee's answer to the petition. The amendment in question was allowed after testimony of the appellant himself had disclosed that within less than two months after he entered the army on June 1, 1918, he had an attack of varicose veins and was operated on therefor and that, soon after he was operated on, because the condition of his leg disabled him so that he could do little walking, he was assigned to a battalion composed of conscientious objectors and cripples, where he remained until he was discharged on December 2, 1918. Under the issues formed before the amendment in question was allowed, the burden was on the appellant to prove that he became totally and permanently disabled while the policy sued on was in full force and effect. Evidence to the effect that appellant suffered from varicose veins before he entered the army tended to rebut evidence relied on by the appellant to support the above set out allegation of his petition. The fact that that allegation was put in issue was enough to put appellant on notice that he might expect evidence tending to support that allegation to be rebutted by evidence tending to prove that he suffered from varicose veins before he entered the army. In view of the state of the pleadings before the amendment was allowed, it seems that the amendment setting up an affirmative defense was not required to make admissible evidence which was inadmissible before the amendment was allowed. At any rate, it is apparent that appellant was not harmed by the allowance of the amendment which did not have the effect of enabling the appellee to produce evidence of a nature which, prior to the allowance of the amendment, appellant had no reason to anticipate, and that the court did not abuse its discretion in allowing the amendment.

Testimony offered by the appellee to the effect that appellant was suffering from varicose veins at the time he entered the military service was objected to by the appellant on the ground that all soldiers entering the army are conclusively presumed to be in good health at the time of such entry. The court overruled that objection. Evidently the stated ground of objection was based on the provision of the Act of July 3, 1930, § 11 (46 Stat. 995, 38 USCA § 471), creating a presumption in the cases therein stated. That presumption does not apply to suits on war risk insurance policies. Le Blanc v. United

States (C. C. A.) 65 F.(2d) 514. The ruling under consideration was not erroneous.

Appellant testified to the following effect: For two years beginning March 1, 1919, he worked for Joe Lieber, doing automobile repair work at a salary of $20 to $25 a week, the salary varying on account of deductions for time off. During that time he could not work continuously on account of his leg, and did not work continuously for more than two or three weeks without having to lay off a day or two on account of his leg being sore and inflamed. After leaving Mr. Lieber, he worked for Mr. Boutte two or three months, doing automobile repair work. During 1922 he worked three or four months for an auto tire company, which paid him a wage of $50 a week. He quit working there on account of his leg; had to lay up and rest it. Then, after a lapse of several months he tried to work on automobiles brought to his house; worked as he could get a car to work on, sometimes one a week, sometimes two or three a month. Then he worked as an automobile salesman on a commission basis for five or six months. He stated that "while trying to sell automobiles he found out that he did not have any ability as a salesman, and it was not on account of his leg that he could not sell them." After he gave up the attempt to sell cars, he again tried work on cars at his home and also at Elmer's Paint Shop a month. In the fall of 1924 he began vocational training in automobile electrical work, and was so engaged until about the second week in February, 1925. He stated that he might have taken other courses while in vocational training, but he thought he was best fitted for the one he took. After completing the vocational training, he worked for the Chain Battery Company from February or March, 1925, for a period of two years and eight months at weekly wages ranging from $15 to $25. During that time he was off work five or six times for as long as a week or ten days at a time, in order to get relief by staying in bed and treating his leg with bichloride of mercury. After leaving the Chain Battery Company, he opened up an electrical repair business of his own, but could not make anything out of it because of necessary rent. He began the operation of a filling station about August 1, 1928, and continued in that business up to the time of the trial. For about a year a brother-in-law assisted him in that business. Then he moved to the filling station so his wife could assist him. Without his wife's assistance he could not carry on the business because when on his feet two or three hours at a time his leg swells and pains him. Three physicians,

Drs. J. T. Cappel, R. B. Wallis, and W. Luther Stewart, testified in behalf of appellant; and two physicians, Drs. Charles E. Hamilton and Richard S. Crichlow, were witnesses for the appellee. Each of the physicians who were witnesses for the appellant expressed the opinion that the condition of his leg seriously interfered with his pursuit of occupations which involved standing for any length of time. Dr. Cappel stated that he examined appellant about April, 1919, and that he saw and treated him again in about four years. That witness, upon being asked if there are not a number of occupations appellant could follow where he could sit down most of the time, stated that he thinks there are certain things he could do, and that it is advisable for him to do something if he can. Dr. Wallis, who first examined and treated appellant in 1922, upon being asked if appellant could do a certain amount of walking each day without serious danger, stated that he could walk some each day, and he stated that, if appellant could find some sedentary occupation that he is qualified to follow, there is no reason why he should not take it. Dr. Stewart, upon being asked what occupation appellant could follow, it being shown that he is practically uneducated, stated that appellant could follow any occupation that did not require him to be on his feet, but there is no telling when he might have an acute flare-up. Dr. Hamilton stated that he examined appellant in January, 1923, and that there was nothing in his condition to prevent him from following an occupation which permitted him to be seated most of the time. Dr. Crichlow stated that he examined appellant in October, 1922, and that, judging from that examination, appellant could have followed some substantial occupation.

The burden was on the appellant to prove that he became totally and permanently disabled while the policy was in force. That burden could not be sustained without proving that, while the policy was in force, the appellant suffered the alleged bodily impairment, and that that impairment was such as to make it, throughout his life, impossible for him to follow with substantial continuity any substantially gainful occupation. Appellant's own testimony indicated that he abandoned gainful occupations which he entered upon, not because his bodily impairment made it impossible for him to follow those occupations continuously, but for other reasons; that testimony showing that he gave up the work of selling automobiles on a commission basis, not on account of the trouble with his leg, but because he realized that he lacked

ability as a salesman, and that he ceased to carry on an electrical repair business of his own, not because his bodily condition interfered with his doing so, but by reason of not being able to make it profitable "because of necessary rent." Appellant's testimony showed that at the time of the trial he was engaged in operating a filling station, and that he had been continuously so engaged for about four and a half years. There was no evidence tending to prove that he followed that occupation at the risk of seriously injuring his health, or that by doing so his physical ailment was aggravated. The fact that he was enabled to carry on that business by having another person to assist him—part of the time his brother-in-law and the remainder of the time his wife—did not keep that business from being one which appellant could follow without detriment or serious inconvenience to himself. It is not unusual for one's capacity and qualifications to be such that he cannot successfully engage in any gainful occupation unless he is assisted by or associated with another or others. The testimony of the physicians, as well those who were witnesses for the appellant as those who were witnesses against him, was to the effect that appellant's bodily ailment would not seriously interfere with his following a gainful occupation which did not require him to be on his feet most of the time during working hours. There was no evidence inconsistent with a finding that it was possible for the appellant to follow continuously a substantially gainful occupation if he had been reasonably prudent in avoiding employments which required him to be on his feet most of the time during working hours. His own testimony showed that, when he had the opportunity to select the kind of vocational training he would take, he chose to take training in automobile electrical work, though an experience of several years had demonstrated that his ailment seriously interfered with his pursuit of that vocation. We think the record well warrants the statement that the evidence as a whole had no substantial tendency to prove that appellant's ailment made it impossible for him to follow with substantial continuity any substantially gainful occupation. Appellant was not entitled to recover unless he proved the essential elements of the cause of action alleged. White v. United States (C. C. A.) 53 F.(2d) 565; Proechel v. United States (C. C. A.) 59 F.(2d) 648, 652; Bridges v. United States (C. C. A.) 67 F.(2d) 320. The facts that the bringing of the suit was delayed more than thirteen years after the policy lapsed, and that throughout the intervening period, except when he temporarily ceased to work following an acute attack of his ailment, and when he was engaged in taking vocational training (in itself evidence that he was not totally and permanently disabled), appellant was engaged in substantially gainful occupations; made it incumbent on him to produce clear and satisfactory evidence that he was totally and permanently disabled while his policy was in force. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. ——; United States v. Pollock (C. C. A.) 68 F.(2d) 633. To say the least, the evidence produced in the trial fell far short of meeting that requirement. In view of appellant's delay in bringing suit, of his gainful occupations throughout a period of many years, with only brief interruptions, and of the absence of evidence having any substantial tendency to prove that his ailment kept him from following any substantially gainful occupation except at the risk of aggravating that ailment, it cannot reasonably be said that the evidence as a whole furnished any substantial support for a finding that he became totally and permanently disabled before his policy lapsed. It follows that the court did not err in directing a verdict against him.

The record showing no reversible error, the judgment is affirmed.