## UNITED STATES v. HOOPER.
### No. 7473.

Circuit Court of Appeals, Fifth Circuit.

Nov. 28, 1934.

Rehearing Denied Dec. 21, 1934.

HUTCHESON, Circuit Judge, dissenting.

———◆———

Jim C. Smith, U. S. Atty., of Birmingham, Ala., and Jos. H. San, Atty. U. S. Dept. of Justice, New York City, for the United States.

John J. Sparkman, Douglass Taylor, and S. H. Richardson, all of Huntsville, Ala., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action, brought in March, 1932, on a war risk insurance policy, which by the payment of premiums was not kept in force after December 31, 1919. Appellant's complaint alleged that during the life of the policy sued on he became "totally and permanently disabled from following continuously any substantially gainful occupation as a result of the following diseases, ailments and injuries: A gunshot wound in the left arm or shoulder as a result of which the muscles of said left arm or shoulder have perished, also trench feet, as a result of which plaintiff has lost the large toe of his right foot and the other toes of said right foot have become stiff and practically useless, and the toes and bones of said left foot have become stiffened and deformed and practically useless." The allegations of the complaint were put in issue. Upon the conclusion of the evidence the court refused to give the following written charge to the jury, requested by the defendant: "If you believe the evidence in this case, you must find for the defendant."

In a battle in France in October, 1918, the appellee received a gunshot wound in his left shoulder, in consequence of which, while he lay on the battlefield before he was removed therefrom, he was exposed to cold, which caused injuries to his feet, for which he was treated in hospitals, the great toe of his right foot being amputated, and trench feet developed, causing the joints of several toes on both feet to be stiffened. He had trench feet when he was honorably discharged from the Army in November, 1919, and continuously since that time. Prior to entering the Army, appellee was a farmer. Upon his discharge from the Army he went to the home of a brother, who is a farmer, and lived there from that time until the time of the trial. During that time, because of the condition of his feet, he was unable to do the usual work of a farmer, but has helped about the farm, doing some work at times. He was twenty-five years of age when he was discharged from the Army. His school education did not extend beyond the second school grade. A statement signed by him, attached to the report of a board of medical officers which recommended his discharge for disability incurred in the line of duty, showed that he had had explained to him the re-educational and vocational systems, but that he did not care to take advantage of them while in the Army, but requested that he be discharged. Since his discharge from the Army, appellee has received a pension or disability compensation from the government.

In this court it was admitted in argument by counsel for the appellant that evidence adduced supported a finding that appellee has been permanently disabled from earning a living in his prewar occupation of farming, or in any other occupation requiring him to be constantly on his feet.

No evidence adduced tended to prove that the gunshot wound received by the appellee had any permanently disabling effect. The controlling question in the case is whether

any evidence adduced supported a finding that during the life of the policy sued on appellee became totally and permanently disabled from following continuously any substantially gainful occupation, as alleged in his complaint.

██ Two physicians were witnesses in the trial, one for the appellee and one for the appellant. The physician who was a witness for the appellee in his direct examination, after stating that he examined appellee about three or four months before the trial and treated him several years ago, and describing what he observed, testified that appellee is permanently and totally disabled as far as any work that would require him to be constantly on his feet. On cross-examination the witness stated that appellee might be able to be a watchman, or to run an elevator, or a street car, where he is in a sitting position and pulls the lever, or an automobile, or he could be a lunch counter cashier, if he has sufficient education. The other physician testified as to an examination of appellee by the witness in 1922, and finding that appellee had severe trench feet permanently disabling him 15 per cent., and disabling him for some occupations more than others, and that appellee could not hold out doing a full day's work on his feet, and could not do any farming at all successfully. The testimony of neither of the physicians, nor that of any other witness, indicated that appellee was mentally deficient or at all lacking in intelligence or that he was physically impaired otherwise than by reason of the condition of his feet. There was no evidence inconsistent with findings that appellee's failure, since he was discharged from the Army, to earn a living by work was due, not to any permanent disability, but to his choosing not to follow a gainful occupation, other than farming, for which he was qualified, or, if when he was discharged from the Army he was not qualified to follow such other occupation, electing not to make the effort to become qualified to follow a substantially gainful occupation for the following of which he was mentally and physically capable of becoming qualified, and that appellee, if he had chosen to do so, could continuously have followed a substantially gainful occupation not requiring him to be constantly on his feet. Appellee was not entitled to recover unless he proved the essential elements of the cause of action alleged, and the lapse of more than twelve years after the policy ceased to be in force before the suit was brought put on him the burden of supporting the claim asserted by clear and satisfactory evidence. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; O'Quinn v. United States (C. C. A.) 70 F.(2d) 599; Proechel v. United States (C. C. A.) 59 F. (2d) 648. Proof that one, by reason of a foot malady which prevents his being on his feet constantly, is permanently disabled from following the occupation of farming, does not support the conclusion that he is totally and permanently disabled from following continuously any substantially gainful occupation which does not require him to be on his feet constantly. The evidence fell short of having any tendency to prove that appellee's disability was such as to make it impossible for him throughout his life to follow continuously any substantially gainful occupation. The above-mentioned ruling was erroneous. The judgment is reversed.

HUTCHESON, Circuit Judge (dissenting).

Because my differences with the majority seem to me to be too fundamental to be satisfied with a bare dissent, I shall attempt to sum up and point them out.

We differ as to what plaintiff had to prove to take his case to the jury. We differ, too, as to the effect of what he proved. My associates say in effect that because plaintiff, a young farmer with a second grade education, the effective use of whose feet had been entirely destroyed, did not make affirmative proof that he had tried and been unable to get work which did not require such use, he failed to make a case for a jury verdict on whether his disability has prevented and will prevent his following a substantially gainful occupation. They say this though the uncontradicted proof shows that since he came out of the Army he has not been able to work at farming or at any other occupation which requires much use of his feet, and the government offered no testimony tending to show that there was anything which a person as crippled as he is, could do.

The trial judge and the jury saw the plaintiff; they saw the condition of his feet. They heard him testify that since he came out of the Army he has lived with his brother on the farm and that he has not had any substantially effective use of his feet. They heard a physician for plaintiff testify that he is totally and permanently disabled as far as any work that would require him to be on his feet is concerned. They heard this same physician testify that though there might be some types of work plaintiff might be able to do, if he was mentally capable of doing it, he did not

think there was anything that he could do. They heard a witness, Cotton, say plaintiff had not been able to work at farming since the war, and that while he had seen him try to work he could not do it. They heard his brother say, "Ira could not work any when he came out of the Army," and that he has not worked since. This, with the profert of his person as a witness and of his feet for examination by the jury while on the witness stand, was plaintiff's evidence. Against this appellant offered nothing, except the testimony of one witness, a doctor, who after identifying an examination he had made of Hooper in 1922, and his then estimate of his disability at 15 per cent. testified on direct examination, "I thought it permanent. It would disable him for some occupations more than others. A man walking all the time would be worse than sitting all the time," while on cross-examination he stated, "I would say that he is pretty well disabled. He could not do any farming at all successfully. He could not hold out doing a full day's work on his feet."

The majority say the evidence fell short of having any tendency to prove total and permanent disability, because it did not prove that plaintiff could not have engaged in some supposed employment. The District Judge quite reasonably, I think, concluded otherwise, and in a charge fairly and fully presenting the government's theory that plaintiff could not recover merely by proving that he could not farm, that it must appear also from the whole case that there was no other occupation that he could gainfully follow,[1] sent the case to the jury. The jury, not at all unreasonably in my opinion, reached the conclusion that the evidence made out a case.

I recognize and have written, that a veteran may not recover as for total and permanent disability by merely proving inability to work at a particular job, where there is proof showing that there were other jobs he was competent to do and which he could reasonably get and hold. United States v. Jones (C. C. A.) 73 F.(2d) 376. I think it cannot be doubted, however, that it was not the intent of the statutes authorizing these policies to establish, as matter of law, that a young farmer, so desperately crippled as to be completely disabled from farming and from any other kind of work requiring substantial use of his feet, may not recover merely because of the view advanced by way of supposition, and not by way of proof, that there might be something else at which he might gainfully work. I think plaintiff's case was made out sufficiently to go to the jury when he proved that experienced only as a farmer, and having only a second grade education, he has been rendered permanently and totally disabled by the practical loss of the use of both feet, from making a living by labor, and it was for the government, if it had such proof, to show that though so disabled, there is substantially gainful work he can get and hold.

On this record, devoid as it is of such proof, it seems to me to be an invasion of the jury's province for this court to substitute its own judgment, that plaintiff's disability is not such as to prevent his obtaining gainful employment, for that of the jury that it is. Odom v. United States (C. C. A.) 70 F.(2d) 104.

I dissent.

#### On Petition for Rehearing.
PER CURIAM.

As neither of the judges who concurred in the decision of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.

---

[1] "If there is any occupation that affords a substantial living that this man, without standing on his feet all the time, could accomplish with his limited education, then he can't get his insurance because that is what he was insured against. On the other hand, if you believe the condition of his feet is such that there is no occupation he could follow to get a living out of, even a poor living, by reason of the condition of his feet, then he would be entitled to his insurance. The burden is on him to reasonably satisfy you that he is totally disabled in that sense. If you find the burden to have been sustained by the reasonable preponderance of the evidence, then you would give him his insurance. If, on the other hand you are not reasonably satisfied from the evidence but what he could pursue a gainful occupation, one that would not require him to stand on his feet or walk to an extreme extent, then if he could follow such an occupation and make a substantial living out of it, he can't get his insurance."