## UNITED STATES v. MESSINGER.
### No. 3526.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1934.

Samuel Biern, of Huntington, W. Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a war risk insurance case in which there was a verdict and judgment for the plaintiff. Insured was discharged from the Army in 1919 and paid premiums on his policy until March, 1920. He had had attacks of pneumonia and influenza while in the Army, and was unquestionably suffering from pulmonary tuberculosis at the time of his discharge. He died of tuberculosis in 1931. The question in the case was whether the disease had reached such stage at the time insured stopped paying premiums on the policy as to constitute total and permanent disability within the meaning of its terms. The appeal presents only two points of substantial merit: (1) The contention that there was not sufficient evidence of total and permanent disability to take the case to the jury; and (2) that the court erred in a portion of the charge dealing with the testimony as to the ability of insured to do light work under favorable conditions.

On the first question, we think that the evidence as to total and permanent disability was sufficient to present a jury question. There was evidence that in 1919 and 1920 insured had tuberculosis and was advised to go to a dry climate for his health; that he acted upon this advice, and in 1921 sold a share of property which he had inherited and went to New Mexico, where he stayed for a number of months; that the disease remained active, notwithstanding the efforts of insured to effect a cure, and grew gradually worse until it resulted in his death; and that, while he did some work from time time, he was at no time able to work without material injury to his health. Taking this evidence in the light most favorable to plaintiff, it tended to show that, at the time insured stopped paying premiums, his disease constituted total disability and was based upon conditions rendering it reasonably certain that this disability would continue throughout life. Carter v. United States (C. C. A. 4th) 49 F.(2d) 221. There was no such work record in the case as to completely negative the existence of total and permanent disability as in United States v. Harrison (C. C. A. 4th) 49 F.(2d) 227 or United States v. Diehl (C. C. A. 4th) 62 F.(2d) 343. And the testimony of physicians to the effect that the disease was continuously active and dis-

Okey P. Keadle, Asst. U. S. Atty., of Huntington, W. Va. (David D. Ashworth, U. S. Atty., of Beckley, W. Va., and Thomas E. Walsh, Chief Atty., U. S. Veterans' Administration, of Washington, D. C., on the brief), for the United States.

abling, taken with the ineffectual efforts to effect a cure by going to a favorable climate and otherwise, distinguish the case from such cases as United States v. Stack (C. C. A. 4th) 62 F.(2d) 1056, where it was merely shown that insured had tuberculosis at the time of the lapse of the policy, with nothing to show that it had reached such stage or was of such character as to render it reasonably certain to be disabling throughout life.

But, while there was evidence for the consideration of the jury to the effect that insured was totally and permanently disabled when he ceased paying premiums, there was a strong showing by the government that he was not so disabled; and we think that the government was denied the full benefit of this defense as a result of the portion of the court's charge of which complaint is made. An examination of insured made in New Mexico in April, 1921, showed that his tuberculosis was incipient and inactive, and that, while he had more than 10 per cent. disability, he was able to resume his pre-war occupation of laborer. An examination made by Dr. W. W. Point in July, 1922, showed that insured had incipient pulmonary tuberculosis which had been arrested, that the prognosis was good, and that his mental and physical condition was such that vocational training was feasible "away from gases, fumes, dust, excessive labor, heat or cold." Dr. Point testified that in his opinion a man with arrested tuberculosis could work without impairing his health, and that insured could do almost any kind of work except such as would expose him to the things mentioned in his report of examination, viz., "gases, fumes, dust, excessive labor, heat or cold." Dr. E. E. Rose, who examined him in October, 1923, found him suffering with arrested tuberculosis, and testified that he could have done any light outside work or light farm work.

The learned trial judge, after charging on the general principles of law applicable, charged specifically on insured's contention that he was not to be denied recovery merely because he had worked, if in fact he was not able to work, reading at length from the opinion of this court in the Carter Case, which was perfectly good law as applied to that aspect of the case. When, however, he came to the government's contention that the insured was not totally and permanently disabled because his tuberculosis was of such a character that it was possible to arrest it, and that it was arrested and he was able thereafter to do light work under proper conditions, this aspect of the case was treated in a very different manner. The law properly applicable thereto was not charged, the defense itself was subjected to ridicule, and the jury were told in effect that it amounted to nothing. The portion of the charge relating thereto, being the portion to which exception was taken, is as follows:

"I cannot help but smile at my good friend Dr. Point's statement of what a man in McComas' condition could do. As he puts it down on this piece of paper he says he should work 'away from gases, fumes, dust, excessive labor in heat or cold.' Now where in the world are you going to work? It is positively amusing to me to hear people talk about 'light farm work,' for there never was any such thing as 'light farm work' if you really work on a farm. There might be loafers on the farm, probably are, the same as any place else. I have known some myself, but there is no such thing as farm work being light if it is real farm work. Nobody could call it 'light farm work' if you drive a plow, hit a stump in the field and have the plow throw you over on your head. At least, that wouldn't be 'light' in my opinion. Nor would I call it 'light farm work' to hoe corn all day or to pull weeds. Try it. No, I do not think there is any such thing as 'light' work on a farm. I am the owner of four farms and have paid a good many hands, but I would never hire any man for 'light farm work,' for there simply is no such animal and you know it as well as I do. Returning to this proposition of working away from gases, fumes, dust, excessive heat or cold: Is there any such work as that up Guyan Valley? I do not know where it is. You could not work in the mines, you could not work on the roads and you could not work on a farm. Where would you work? That is for such consideration as you care to give it. That is what Walter Point said, and what he put on this paper that he could do when he said he had a case of arrested tuberculosis. He said he could work at that sort of work. That is the testimony of the government's doctor, who is an awfully nice fellow, I will say, one of the best I know, and he states the facts as he sees them and there they are."

As stated above, this charge virtually amounted to an instruction to ignore the government's defense. That defense was that, although insured had tuberculosis, the disease had been arrested, and insured was able to do light work amid favorable conditions, and therefore could not be said to be totally and permanently disabled. The court ridiculed the idea that any farm work could be light or that any place could be found in the val-

ley where insured lived complying with the conditions prescribed by Dr. Point. Of course, the insured would not be deemed totally disabled merely because he could not do farm work or because he could not work in a particular valley. We know as a matter of common knowledge that many cases of tuberculosis are arrested, and that, after they are arrested, the patient can engage in many occupations, although he cannot ordinarily do heavy manual labor, nor can he work amid conditions tending to cause a recurrence of the disease, such as dust, extreme heat, or cold, etc. To say that a man who has an arrested case of tuberculosis, or a case which can be arrested with proper treatment, is totally and permanently disabled, because he cannot do heavy labor or work amid all conditions, is to adopt a theory contrary to human experience and one which has been repudiated by the courts in a practically unbroken line of decisions. See particularly Ivey v. United States (C. C. A. 4th) 67 F. (2d) 204; United States v. Diehl, supra; United States v. Rosborough (C. C. A. 4th) 62 F.(2d) 348; United States v. Stack, supra; Eggen v. United States (C. C. A. 8th) 58 F.(2d) 616, 620.

Instead of charging the jury as he did with respect to the defense of the defendant, which practically eliminated that defense from their consideration, the learned judge should have charged them that they should find in favor of the defendant if the tuberculosis with which insured was afflicted during the life of the policy was of such a character or had progressed only to such a stage that it was possible to arrest its progress and render him able again to engage in some substantially gainful occupation without material injury to his health, even though such occupation might involve only light labor and might be carried on only under conditions which would not cause a recurrence of the disease. And he should have charged them further that, in passing upon this question, they should give consideration to the testimony of the witnesses to the effect that the disease was in fact arrested during the years 1922 and 1923, and that defendant was then able to engage in light work without material injury to his health. Having charged at length upon the theory of plaintiff and the law applicable thereto, he should have charged upon the principles applicable to the defense of the government. Quercia v. U. S., 289 U. S. 466, 470, 53 S. Ct. 698, 77 L. Ed. 1321; Allison v. U. S., 160 U. S. 203, 16 S. Ct. 252, 40 L. Ed. 395; Pullman Co. v. Hall (C. C. A. 4th) 46 F.(2d) 399, 404; Weiss

v. Bethlehem Iron Co. (C. C. A. 3d) 88 F. 23, 30; Hall v. Weare, 92 U. S. 728, 23 L. Ed. 500.

For the reasons stated, the judgment appealed from will be reversed, and the case will be remanded for a new trial.

Reversed.