## UNITED STATES v. ELMORE.

### No. 7163.

Circuit Court of Appeals, Fifth Circuit.

Jan. 31, 1934.

George Earl Hoffman, U. S. Atty., of Pensacola, Fla., and W. C. Pickett, Sp. Asst. Atty. Gen., for the United States.

William Joseph Sears, Jr., and Dana Brown, both of Jacksonville, Fla., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from a judgment in favor of the appellee in an action, brought in January, 1932, on two five-year convertible term war risk insurance policies for $5,000 each, issued to the appellee in 1927, and renewed after the suit was brought, premiums being duly paid up to the date of the trial. Appellee's petition alleged that he became totally and permanently disabled on or about February 14, 1931, and prayed that he be awarded monthly installments from that date payable, under the terms of the policies, upon the occurrence of total permanent disability. That allegation was put

in issue. Upon the conclusion of the evidence, the court denied a motion of the appellant that a verdict in its favor be directed. The judgment rendered was in accordance with the prayer of appellee's petition.

To sustain the claim asserted by the appellee, the burden was on him to adduce evidence showing with reasonable certainty that he was totally and permanently disabled on or about February 14, 1931, and at the time the suit was brought. Walters v. United States (C. C. A.) 63 F.(2d) 299. At the time the policies sued on were issued and until February 15, 1931, appellee was engaged in the practice of his profession of physician and surgeon at Gainesville, Fla., on and prior to that date being assistant surgeon to Dr. Thomas A. Snow at a hospital at that place. On that date appellee suffered an attack, which resulted in a collapse and total unconsciousness. On that date he was carried to the Veterans' Hospital at Lake City, Fla., and remained there about three weeks. On July 29, 1931, appellee had a similar attack, and was again carried to the hospital at Lake City, was there about one month, and was sent from there to the Diagnostic Center at Washington, D. C. The appellee and four other physicians— Dr. J. M. Dell, Dr. Thomas A. Snow, Dr. J. L. Summerlin, and Dr. Edwin H. Andrews —were witnesses in his behalf. The appellee testified to the following effect: Prior to February 15, 1931, he was in excellent physical condition and was in active practice of his profession as a physician. Since that date, he has not engaged in the active practice of his profession. He has been unable to assist Dr. Snow since that date, and does not now carry on the practice of medicine. On his cross-examination the appellee stated: "The recognized tests for diabetes are Fehling solution, but could not remember the others. He was given tests at Lake City and at Washington. The tests at Washington showed quite a bit of sugar. Because of treatment at Washington, the sugar lessened, because he was given insulin, and it gradually cleared up. Diabetes is sometimes permanent and sometimes not. A person may get other complications with diabetes and when coupled all together it would probably be permanent. Diabetes is necessarily permanent." At this point in the cross-examination of the appellee the court sustained an objection of his counsel to any further questioning of the witness along the lines of expert testimony because it is improper cross-examination, his counsel not having qualified the witness as an expert. Dr. Dell

in his direct examination stated: He was called to attend Dr. Elmore on February 15, 1931, and found him in a state of collapse. He thought the plaintiff was suffering from some cerebral disturbance, probably caused from diabetes, or arteriosclerosis. The plaintiff was too sick at that time to make a thorough examination, but from his general observation of plaintiff at that time and from the examination he did make he would say he was suffering from a diabetic condition and arteriosclerosis. He saw the plaintiff very often after plaintiff's return from the Lake City Hospital. After the attack on February 15, 1931, the plaintiff was not able to carry on in toto the practice of medicine. He had heard that the plaintiff practiced at the Alachua County hospital, after February 15, 1931, but not to his own knowledge. He examined the plaintiff on December 13, 1932, the day prior to the trial, and found that his condition had grown worse since February 15, 1931. The plaintiff could not carry on to any appreciable extent the practice of medicine. The plaintiff probably could do something, but it would not be of such a nature as to amount to anything. He might write a prescription, or something like that, or tell somebody what to do—practically nothing. He believed that the disability from which plaintiff had suffered since February 15, 1931, continuously rendered it impossible for plaintiff to follow his profession of medicine, as a gainful occupation. On his cross-examination Dr. Dell stated: "He could not tell on the particular day of February 15, 1931, whether or not plaintiff's condition was such that it was reasonably certain to continue throughout life. If he had been forced to give an opinion on February 15, 1931, as to whether plaintiff at that time was permanently disabled he would have said that permanent disability might be reasonably expected. At the time plaintiff also had high blood pressure which is also known as arteriosclerosis, or hardening of the arteries, in addition to the diabetic condition. He thought that arteriosclerosis caused plaintiff's high blood pressure. His last examination showed diabetes —a trace of sugar in the urine. One of the surest tests for determining diabetes, is the blood test, but he did not make a blood test." Dr. Snow's testimony included the following: On February 15, 1931, he was called to see plaintiff and found him in a state of collapse, and in an unconscious condition. He saw and observed plaintiff around Gainesville after his return from the hospital at Lake

City. He made a recent examination of the plaintiff and considered his general condition worse than his general condition on February 15, 1931. In his opinion plaintiff has been unable to carry on any substantially gainful occupation since February 15, 1931. He did not think it safe for the plaintiff to engage in the practice of medicine. Diabetes is determined by finding sugar in the urine or in the blood. He always required a twenty-four hour output of urine for analysis, for at times it might be negative in the urine even though a twenty-four hour output might be positive. His diagnosis of the plaintiff was based upon the analysis of his urine by another man. The absolute test for diabetes is blood sugar. He never made a blood test of the plaintiff to determine whether or not he had diabetes. The plaintiff had hypertension and high blood pressure. High blood pressure cannot be cured, but can be relieved. Even when it is relieved and the pressure is reduced it will go back up. Sometimes high blood pressure is caused from some focal infection, which, if relieved, would restore the blood pressure to its proper level. He had examined the plaintiff, but did not find that diabetes was the cause of the blood pressure. His diagnosis of appellee was hypertension and mental syncope. In his opinion, based upon the examination made, the plaintiff was not able to continuously pursue a gainful occupation on and after February 15, 1931. Dr. Summerlin testified that he specializes in eye, ear, nose, and throat work. He made an examination of the plaintiff in July, 1932, and his fundus examination showed definite hypertension. He did not examine the plaintiff for diabetes. He did not find in his examination diabetes retinitis. Diabetes retinitis is a symptom of diabetes which is always looked for in an examination of the eyes. Diabetes retinitis would not necessarily show up in a man with a diabetic condition. Dr. Andrews testified that he examined the plaintiff a short time prior to his collapse in the summer of 1931. He found at that time that the plaintiff had sugar in his urine and elevation of blood pressure and general debility. He examined plaintiff again after his collapse in July, 1931. During the course of that examination sugar was found in the urine at times, and at other times it was not. The general impression at that time was that the plaintiff's unconsciousness was due to a diabetic condition. A lay witness for the appellee testified that the appellee kept an office after February 15, 1931, but would not be there more than about half the time or

less. At other times appellee would be sick in bed. A sister of the appellee testified that appellee had not carried on his profession continuously since February 15, 1931, as he did before that date. Prior to that date plaintiff maintained himself. After that date, plaintiff lived with the witness and she took care of him financially, as well as looking after him.

We think evidence given in the trial tended to prove that appellee was totally disabled following the attack on February 15, 1931. The record does not show that in the trial the appellee undertook to prove that his disability was permanent. The subject of his disability being or not being permanent was not mentioned or referred to in the examination of witnesses except in the above-quoted parts of the testimony on cross-examination of the appellee and Dr. Dell. The statements by the appellee in the quoted part of his testimony on cross-examination of opinions as to diabetes well may be considered as being without probative value by reason of the cross-examination of him as an expert being stopped upon his counsel suggesting that the witness had not been shown to be qualified as an expert. The expressed opinion of the witness as to diabetes is to be regarded as without probative value on the additional grounds that he stated that diabetes is sometimes permanent and sometimes not, and in the next breath stated that diabetes is necessarily permanent, and that the court takes judicial notice of the fact that, since the discovery and general use of insulin, diabetes is not necessarily permanently disabling. Eggen v. United States (C. C. A.) 58 F.(2d) 616. In his testimony Dr. Dell did not state or indicate that at the time his testimony was given he was of opinion that the appellee was permanently disabled. His statement to the effect that, if he had been forced to give an opinion as to whether appellee was permanently disabled at a stated time when by his own admission he could not tell whether appellee's condition was such that it was reasonably certain to continue throughout life, he would have said that permanent disability might be reasonably expected, fell far short of showing that at the time the witness gave his testimony he was of opinion that appellee's disability existing at that time was founded upon conditions which rendered it reasonably certain that it would continue throughout his life. The witness having stated that at the time referred to he could not tell whether or not appellee's condition was such that it was reasonably certain to continue throughout life,

**554**

his statement as to what he would have said at that time if he had been forced to give an opinion shows no more than a guess or surmise confessedly not founded on adequate information. A finding that appellee's disability was permanent is not supported by such evidence of conjecture or mere speculation. United States v. Clapp (C. C. A.) 63 F.(2d) 793; United States v. Rentfrow (C. C. A.) 60 F.(2d) 488.

■ Dr. Snow attributed appellee's disability to high blood pressure. Dr. Andrews attributed that disability to appellee's diabetic condition. The testimony of no witness who was examined as an expert indicated that he was of opinion that diabetes is necessarily permanently disabling, that appellee's diabetic condition was such as to render it reasonably certain that his disability would continue throughout his life, that a disability resulting from high blood pressure, however it is caused, is necessarily permanent, or that appellee's high blood pressure was due to a condition which rendered it reasonably certain to continue throughout his life. No witness, lay or expert, testified to matters of fact or expressed opinion tending to support appellee's claim that he had suffered "total permanent disability" on or about February 14, 1931, or prior to the bringing of this suit. There was no substantial evidence tending to prove that the disability suffered by the appellee was permanent. This being so, the above-mentioned ruling was erroneous. Lumbra v. United States, 54 S. Ct. 272, 78 L. Ed. ——, January 8, 1934. Because of that error the judgment is reversed.