## UNITED STATES v. SHASHY.

### No. 7523.

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1935.

Rehearing Denied March 15, 1935.

Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., and John W. Holland, U. S. Atty., and Wm. A. Paisley, Asst. U. S. Atty., both of Jacksonville, Fla., for the United States.

Wm. Joe Sears, Jr., and Dana Brown, both of Jacksonville, Fla., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action, brought in September, 1931, on an insurance policy, payable in the event of appellee's death or his total permanent disability, issued to the appellee by the appellant on July 1, 1927, upon the appellee's surrender of a war risk insurance certificate issued to him while he was in the Army during the World War. Appellee's petition alleged: "That while said insurance was in full force and effect and on or about the 1st day of October, A. D. 1930, he became totally and permanently disabled by reason of severe throat trouble which began with acute laryngitis and developed into paralysis of vocal chords of throat, resulting in practical loss of power of speech and generally in an extremely weakened physical condition, and that at all times since that date, plaintiff has been and will henceforth continue permanently to be wholly unable to follow any substantially gainful occupation, by reason of said impairments, conditions and infirmities." The premiums on the policy sued on were paid up to the time of the trial in December, 1933. Following the refusal of the court to direct a verdict in favor of the defendant, appellant here, there were verdict and judgment in favor of the appellee. A reversal is sought because of the court's refusal to grant the motion for a directed verdict in favor of appellant.

Appellee is a native of Syria. He came to this country twenty-two years before the trial. As to his education, he stated that he had three or four grades of schooling in the Old Country, and in 1912 he had five months' night school in this country. Before he entered the Army he was engaged in the grocery business in Jacksonville Fla., with his two brothers; the three brothers owning the business together. After he returned from the Army he continued in the same business with one of his brothers on a fifty-fifty basis until March, 1933. During the years 1930, 1931, and 1932, appellee was in the store every day, helped his brother sometimes, cut the meat, and did most of the bookkeeping. During those years he was supporting himself, his wife, and four children on what he got out of the store; the money he paid for shelter, food, and clothing coming from the store. While appellee and his brother were partners in business they were buying two lots, both of which they lost on foreclosure after paying on the lots whatever they made. Appellee stated that for the last two or three years they were losing money. Appellee's brother stated: "We lost money in the business because stuff went down, and everything you bought for a $1.00 went down to 80c, and then crediting the people and losing accounts, and sometimes we took money from the store trying to save the property, and we just lost the whole thing, that's all I can tell you."

In March, 1933, appellee gave up that business, left everything to his brother, and received nothing out of the business. Then he borrowed $500 from a nephew, and with his wife and four children went to Ocala, Fla., and opened a store at that place, with a lot of candy, Coca-Cola, cigars, and groceries. Appellee stated:

"We opened up near the school in Ocala, and my wife is helping me over there. She does most of the talking and answering the telephone. That business has been run since March, and is now being operated. We have no clerk in the store, only a small boy to deliver a few packages. We are not losing money, we are breaking even, and that includes my living expenses.

"I am not making a go of it. Last week I decided to close up the place, because I just couldn't go any further. I haven't closed the place, as I have no work and just don't know how to make a living. I don't know what I shall do. I suppose I'll just have to sit down and die. I have no way to make my living and I get so disgusted until I just don't know what to do."

About a year and a half after his discharge from the Army appellee began to have spells of throat trouble, which occurred two or three times a year. In 1929 the attacks became more frequent and severe, and the appellee, after consulting a physician in Jacksonville, went to the Naval Hospital at Pensacola, where his tonsils were removed. After this his throat was dry, felt raw, and itched constantly, and he lost his voice so that he could not make himself understood without getting very close to the person he tried to talk to. When he tried to talk he got nervous and could not say anything without stopping and taking his breath, so he could start over again. Appellee stated that after he returned from the hospital he could not do any heavy work, that he had trouble in getting his breath, and that after walking more than two or three blocks he would have to stop and rest. In January, 1932, he went to the hospital again and remained there three weeks. After his return from the hospital this time appellee tried to resume work at the grocery store, but frequently had to go to his home and lie down because of his poor condition. He suffered from nervous spells which confined him to his bed for three or four days at a time. Since 1930, appellee's weight has dropped from 208 pounds to 180. Dr. Raymond Sanderson, an eye, ear, nose, and throat specialist, was the only physician who was a witness for the appellee. His testimony was to the following effect: He has treated appellee since December, 1928. When he first examined appellee his diagnosis was partial paralysis of one of the vocal chords; loss of voice. After appellee's return from the hospital in Pensacola in December, 1929, or the first part of 1930, witness found a total paralysis of one of the vocal chords; that condition of the throat would cause pain and irritation, and difficulty in breathing, and in the opinion of the witness was permanent and will continue throughout appellee's natural life. Appellee was extremely nervous. Witness stated that he could not see how appellee could continue at an occupation in the sense of working at it regularly, as a normal man. Upon being informed of the definition of total permanent disability under the law and regulations governing war risk policies, witness stated that he believed appellee is totally and permanently disabled; that he did not think appellee could keep books in a grocery store because of the attacks of shortness of breath; that it would be difficult to estimate the time that appellee could

pursue that occupation without seriously impairing his health, but he did not see how appellee could work regularly more than 50 per cent. of the time. Appellee's condition progressed for about a year, and remained stationary thereafter. The first examination showing complete paralysis of a vocal chord was made in 1929, and there has been no change in appellee's condition since December, 1929. The witness stated:

"I base what I say as to his inability to follow an occupation on the condition of his throat. I could find no trouble anywhere else that might cause that. * * *

"I found nothing else wrong with this man, just this paralyzed condition of one of the vocal chords, and accompanying inflammation, which he will have from constant coughing—from irritation and the coughing associated with it."

We are of opinion that the evidence had no substantial tendency to prove that the appellee was totally and permanently disabled at the time alleged in appellee's petition, October, 1930, or at the time this suit was brought, September 25, 1931. The opinion of Dr. Sanderson that appellee was totally and permanently disabled was without probative weight. United States v. Spaulding, 55 S. Ct. 273, 79 L. Ed. ——, January 7, 1935. Uncontradicted evidence showed that throughout the period from the time of the bringing of the suit to the time of the trial appellee, with substantial continuity, worked at a gainful occupation, earning therefrom enough to support himself, his wife, and his children, and that he did so without his throat trouble becoming any worse. No evidence indicated that appellee's discontinuance of his connection with the business in which he and his brother were partners was due to appellee's ailment. It is fairly to be inferred that that business ceased to be profitable because of unfavorable business conditions and losses due to unprofitable property investments. It is not proof of total disability that appellee had to have the assistance of his wife, or one or more other persons, to carry on the business at Ocala in which he was engaged at the time of the trial. United States v. Haywood (C. C. A.) 73 F.(2d) 378; O'Quinn v. United States (C. C. A.) 70 F.(2d) 599. Though appellee was permanently partially disabled by his throat ailment, it well may be inferred that his long training and experience in the grocery business caused what he was able to do in

supervising and helping in the conduct of the business at Ocala to be a substantial contribution to making that business a means of supporting the appellee, his wife, and his children. The appellee, having intelligence and experience enabling him to supervise the business, though unable to do much of the active work himself, and being able, with the assistance of another or others, to earn a living from the business without making his ailment worse, he was not totally and permanently disabled. United States v. Luckinbill (C. C. A.) 65 F.(2d) 1000. What the evidence showed he actually did without aggravating his ailment fairly negatives the conclusion that he was totally and permanently disabled at the time alleged in his petition or when the suit was brought. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492. The burden was on the appellee to prove that he was totally and permanently disabled. United States v. Elmore (C. C. A.) 68 F.(2d) 551. That burden was not sustained by any phase of the evidence. The evidence did not go beyond showing that appellee suffered a permanent partial disability. The above-mentioned ruling was erroneous.

The judgment is reversed.