264

## UNITED STATES v. BOSHART.
### No. 8430.

Circuit Court of Appeals, Ninth Circuit.
June 21, 1937.

Peirson M. Hall, U. S. Atty., of Los Angeles, Cal., and Julius C. Martin, Direc- tor, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett and Fendall Marbury, Sp. Assts. to Atty. Gen., for appellant.

David Spaulding, of West Los Angeles, Cal., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

Amaniuel Boshart brought an action on his five-year convertible term policy for $10,000 of government life insurance issued to him April 1, 1927, alleging that he had become totally and permanently disabled April 21, 1932, and that he had made due proof of such disabilities. He prayed for disability compensation of $57.50 per month from April 21, 1932, and for the refund of all premiums paid by him subsequent to that date.

The complaint was filed December 30, 1932, and answered June 14, 1933. On December 23, 1933, the veteran died. Thereafter his widow, as administratrix of his estate, filed an amended and supplemental complaint. She alleged that the veteran became totally and permanently disabled while the converted insurance was in effect and that "by reason whereof there became due and owing Amaniuel Boshart, or his estate, the sum of $57.50 per month commencing on April 21, 1932." She did not specifically allege that the veteran became totally and permanently disabled April 21, 1932, but made the following allegation: "That if Amaniuel Boshart was not totally and permanently disabled on the 21st day of April, 1932, he was so disabled on the 17th day of November, 1933 and entitled to benefits of said policy of insurance from November 17, 1933." She alleged that due proof of said permanent and total disability was made to the defendant and demand was made for payment of the aforesaid amounts.

On March 17, 1936, defendant filed an answer to plaintiff's amended complaint and denied that the veteran became totally or permanently disabled before his death; denied that the veteran made due proof of his permanent and total disability, or that it had disagreed with him as to his claim of disability, but alleged that on October 20, 1932, the veteran made formal claim for insurance benefits claiming to have become permanently and totally disabled January 6, 1930; that this claim was denied by the government November 5,

1932; and that the government "disagreed with the insured as to his claim that he had been permanently and totally disabled since January 6, 1930, or at any subsequent date thereto to and including November 5, 1932."

By stipulation a jury was waived and after trial the court made its findings of fact and conclusions of law, finding that the veteran became totally and permanently disabled November 5, 1932, and that he was entitled to recover benefits under the policy commencing on November 5, 1932. The court also found that the decedent had paid premiums on the policy to include December 1933, that due proof was made of the permanent and total disability on November 5, 1932, and that the plaintiff was entitled to recover all premiums paid by the veteran subsequent to November 5, 1932.

As conclusions of law, the court held "that the plaintiff is entitled to recover from the defendant, United States of America, benefits in accordance with the terms of said policy of insurance from November 5, 1932." The judgment declared that the "plaintiff herein, is entitled to receive from the defendant the sum of $57.50 per month commencing on the 5th day of November, 1932," and ordered "that the plaintiff recover from the defendant benefits in accordance with the terms of the policy No. K-613,471, at the rate of $57.50 per month commencing on the 5th day of November, 1932," and "that the plaintiff herein recover from the defendant, all moneys paid by Amaniuel Boshart to defendant as insurance premiums under policy No. K-613,471 subsequent to November 5, 1932." The judgment also provided for the payment of attorney's fees of "ten per cent of the amount of any and all monies due plaintiff in accordance herewith"; that the attorney was entitled to 10 per cent. "of each and every payment other than the said sum found to be due hereunder, hereinafter made by the defendant to the insured, his heirs, executors and assigns, in consequence of, or as a result of the entry of this judgment."

It will be observed that neither the findings nor judgment fix the amount to be paid by the United States to the appellee as administrator of the estate of Boshart. Apparently the form of judgment used was that ordinarily used where the insured recovers upon the policy by reason of his total and permanent disability. In such a case, of course, the statute fixes the liability of the government to pay $57.-50 per month only so long as the insured remains totally and permanently disabled. Here it should be stated that the beneficiaries under the policy were the widow, Jessie B. Boshart, who sues herein as administratrix and not individually, and a daughter of the deceased who is not a party to the action.

■ The appellant attacks the judgment on the ground that under the law and policy unpaid monthly installments due or payable to the deceased because of his total and permanent disability which remain unpaid at the time of his death are payable, not to his estate, but to the beneficiaries named in the policy, and that the premiums paid after such total and permanent disability, payment of which was expressly waived by the terms of the policy, are also payable to the beneficiary named in the policy and not to the estate of the deceased. The appellee relies heavily upon our decision in U. S. v. Wilson (C.C.A.) 85 F.(2d) 444, wherein we held that installments due the insured because of his total and permanent disability unpaid before his death were payable to his personal representative. This conclusion was arrived at by reason of the express provisions of section 26 of the World War Veterans' Act, as amended, 38 U.S. C.A. § 451. No application was made for certiorari in that case, and it has not been questioned. That section is not applicable to converted insurance. By its terms it applies to "monthly installments of compensation, yearly renewable term insurance, or accrued maintenance and support allowance which has become payable under the provisions of Parts II, III, or IV of this chapter." 38 U.S.C.A. § 451, 44 Stat. 792, 46 Stat. 1016.

By section 301 of the World War Veterans' Act, as amended (38 U.S.C.A. § 512) the yearly renewable term insurance was required to be converted in accordance with the statute in such other forms of insurance "as may be prescribed by regulations and as the insured may request." The policy held by the veteran at the time of his death was issued in pursuance of the terms of this section and the regulations adopted in pursuance thereof. We will turn, therefore, to a consideration of the statute and policy provisions involved in the proper construction of the policy, which provisions the government insists require that all payments due from the gov-

ernment, and not in fact paid to the veteran, must be paid to the beneficiaries named in the policy. The policy provides that "upon due proof of total and permanent disability of the insured while this policy is in force, the monthly installments shall, except as hereinafter provided, be payable to the insured and continue to be so payable during total permanent disability so long as he lives, and the payment of all premiums due after receipt of such proof during his total and permanent disability shall be waived." From this it is argued that there is no provision authorizing payment to his estate after his death. This above-quoted provision is followed in the policy by directions as to payment of death benefits to the beneficiary. It is provided that beginning on his death the monthly installments shall be paid to the beneficiary designated until 240 payments in all, "including any paid to the insured during his lifetime on account of total permanent disability, shall have been paid; but if 240 or more installments shall have been paid to the insured on account of total permanent disability, no death benefit shall be payable." From this provision it follows that the total liability of the government on the policy to the beneficiaries is 240 installments and that in this number of installments are included those paid to the insured. This, of course, does not solve the problem as to whether or not premiums which should have been paid to the insured are collectible by his estate, but in determining whether or not payments due to the insured by reason of his total and permanent disability and not paid to him should be paid to his beneficiaries or his estate, it should be borne in mind that over a long period of time it has been demonstrated that veterans have claimed disability benefits for many years prior to the establishment of their right thereto and that if payments due are to be treated as the equivalent of payments made there would be great uncertainty in determining the amounts which would be due to the beneficiaries in the event that the personal representative of the deceased made claims adverse to those of the beneficiaries. There are, however, other provisions in the policy that indicate an attempt to prefer the beneficiary under the policy to the estate of the decedent in determining disposition of moneys due under the policy which might have been recovered by the insured prior to his death. For instance, with reference to the payments

of premiums, the policy recognizes that such payment may have been made in advance and therefore that the death or permanent disability will occur at some time during this period and before the entire premium was earned. It is provided that in such event the refund of premium shall be made "to the insured, if living, otherwise to the beneficiary." In the case at bar, we have the personal representative of the insured attempting to collect for the estate premiums which are waived by the government by reason of his incapacity and a judgment is in favor of the claim of the administratrix. This provision of the policy with relation to the repayment of unearned premiums is not applicable to the repayment of premiums that are waived, but no reason is discernible for a different treatment of the two different types of payment. Consequently, this provision tends to support the claim of the government that all the benefits under the policy not actually paid to the assured are to go to the beneficiary in the event of his death before payment. The provisions of the policy with reference to the refunding of waived premiums do not specify to whom they shall be paid, but provide that the disability benefits may relate back to a date not exceeding six months prior to the receipt of due proof of such permanent total disability and that "any premiums paid after receipt of due proof of total permanent disability and within the six months shall be refunded without interest," thus implying payment to the insured.

The policy also provides, clause 11 (a), that certain disabilities such as the loss of the use of both feet, or both hands, or both eyes, shall be deemed to be total permanent disability and that the monthly payments therefor shall accrue from the date of such total permanent disability, and "any premiums paid after the date of such total permanent disability shall be refunded without interest."

██ The policy provides, clause 13, that in case of paid-up insurance if "one or more monthly installments be paid on account of total permanent disability * * * there shall be paid to the beneficiary upon the surrender of this policy at the death of the insured the remaining unpaid installments (240 less the number paid)." In this clause we have a repetition of the word "paid" as distinguished from other phrases which might indicate an accrual of an uncollected obligation.

It must be conceded that there are conflicting principles to be considered in construing the policy and the statutes and the regulations authorizing its issuance. Ordinarily, money due to an individual who has died is collectible by his personal representatives. In the absence of any expression or intent to the contrary, statutes and documents conferring a right upon an individual must be deemed to have been written in the light of this principle. On the other hand, we are here concerned with the interpretation of a policy of insurance issued by the government to those who served in the World War and which by its terms is unusually generous to the insured. The exemption of this insurance from the debts of the veteran,[1] whether in his hands or in the hands of a beneficiary, indicates the special nature of the contract, and the fact that the creditors of the decedent who would ordinarily benefit from a payment to the personal representatives of the deceased are not interested in the question as to whether or not payments are made to the estate. The conflicting interests involved are those of the heirs and of the beneficiary designated by the insured. If this designation were given the same dignity as a will and testament indicating the desire of the assured as to the disposition of all benefits under the policy, there is no inherent reason why the government should not by-pass the estate of the insured by authorizing such payments to be made directly to the beneficiaries named by the insured.

It is difficult to escape the conclusion that in using the word "paid" in the policy as distinguished from the word "accrued" it is used in its ordinary acceptation. In determining whether or not the word "paid" was used in its ordinary acceptation, it should be observed that the payments to the beneficiary are fixed with reference to the payments which have been made to the insured, and that the beneficiaries are entitled to recover only the amount which has not been paid to the insured. It would be an anomalous situation

to have a large part of the policy diverted from the beneficiary to the claims of some heir perhaps only remotely related to the insured where the insured has indicated that he prefers that the beneficiary shall receive the proceeds of the policy by naming a beneficiary. This beneficiary may not be an heir at all, and in all probability would not be the sole heir in any event. The purpose of the assured taking out his policy and paying the premiums therefor so far as total and permanent disability is concerned was to secure means for the support and maintenance of himself and family during the disability. Money not paid to him during his lifetime is of no value for that purpose. . If we assume that by reason of his disability he has been unable to pay his expenses and that he died owing debts which had been incurred to take care of him during his disability, it might be just to all concerned to pay this money to his estate in order that the creditors, who had in fact furnished the means to support the veteran during his disability, might be repaid, but the statute expressly exempts the proceeds of the policy from such claims, and that payment of the money to the estate would be of no avail to such creditors. Section 22, World War Veterans' Act, 38 U.S.C.A. § 454.

The government contends that the consistent practice of the Veterans Bureau has been in accordance with the foregoing interpretation of the policy. No satisfactory evidence is cited to support such a conclusion and we therefore do not rely upon the statement in construing the policy. If this had been an administrative policy for any length of time, evidence thereof could have been readily supplied to the court, as was done in the Supreme Court in the case of Halbert v. U. S., 283 U.S. 753, 762, 51 S. Ct. 615, 618, 75 L.Ed. 1389.

The foregoing considerations lead us to the conclusion that the word "paid" used in the policy should be literally construed, consequently, that the appellee is not entitled to recover from the government in behalf of the estate of the veteran any ac-

---

[1] Section 22 World War Veterans' Act (38 U.S.C.A. § 454) provides: "The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, * * shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV."

Clause 15 of the policy provides: " * * The proceeds of this policy shall not be subject to the claims of creditors of the insured or creditors of any beneficiary to whom the proceeds may be awarded, except claims of the United States arising under the War Risk Insurance Act or the World War Veterans' Act."

crued payments for total and permanent disability or for return of premium waived by reason of said disability. The judgment must be reversed.

Judgment reversed.