## SLOAN v. UNITED STATES.

### No. 2169.

District Court, W. D. South Carolina, Anderson Division.

July 7, 1937.

Edward H. Ninestein, of Walhalla, S. C., and Calhoun A. Mays (of Mays & Featherstone), of Greenwood, S. C., for plaintiff.

Onan A. Hydrick, Atty., Bureau of War Risk Litigation, of Washington, D. C., and E. P. Riley, Asst. U. S. Atty., of Greenville, S. C. (Oscar H. Doyle, U. S. Atty., of Greenville, S. C., of counsel), for the United States.

WYCHE, District Judge.

This action was commenced by Dr. Baylis F. Sloan against the United States for benefits under a policy of government life insurance for an alleged total permanent disability. While the action was pending, the plaintiff died, and subsequent thereto Mrs. Emma Merrick Sloan, the executrix of the estate of the insured and the beneficiary named in his policy, was substituted as plaintiff and permitted to file an amended complaint. The case came on for trial before me and a jury in the Anderson division of this court on May 27, 1937.

It was conceded by the defendant that a policy of government life insurance in the sum of $10,000 was issued to the insured on July 1, 1927, with the usual provisions relative to total permanent disability benefits and that premiums on said policy were paid until July 1, 1933. The jurisdiction of the court was established by evidence that the insured had filed proof of his total permanent disability and made claim for the benefits provided by the policy on May 25, 1932, and that the defendant through the Insurance Claims Council had denied the claim first on October 25, 1932, and after a later re-examination on July 5, 1934.

At the conclusion of the evidence each party moved for a directed verdict. Thereupon I dismissed the jury and considered the evidence and argument of counsel.

The evidence establishes that the insured, Dr. Baylis F. Sloan, was a physician and at one time enjoyed a large general practice in the town of Walhalla and the surrounding country. His health became impaired and grew progressively worse. As his health declined, his practice decreased because his illness prevented proper attention to it. Though there was testimony of his bad health and declining practice as early as 1929, the first thorough examination of his condition was

made by Dr. J. B. Latimer for the Veterans' Administration on June 3, 1931, which examination disclosed that Dr. Sloan was then suffering from severe chronic hypertension, commonly known as "high blood pressure," moderately severe chronic myocarditis, which is weakening of the heart muscle, severe nephritis, which is chronic Bright's disease, hardening of the arteries, and other less serious diseases. Another examination of the insured made by Dr. C. H. Young, his personal physician, in the summer of 1931, showed the same diseases in a severe form. These and other physicians, including those called as witnesses by the defendant, were all agreed that these diseases were permanent in their nature and would grow progressively worse until death and would be aggravated either by mental or physical exertion.

By the year 1933, Dr. Sloan's income from his practice of medicine had dwindled to such a small amount that it was entirely inadequate for the support of himself and family consisting of a wife and ten children. At that time his friend, Hon. Harry R. Hughes, State Senator from his county, conceived the idea of having Dr. Sloan appointed to the position of county health officer, for the purpose of giving public recognition of the splendid service which Dr. Sloan had performed in the past, coupled with the desire to provide a means of support for his family. Dr. Sloan was reluctant to accept the position because he felt that the condition of his health would not permit him to properly perform its duties, but finally consented to do so. Dr. Ben F. Wyman of the State Department of Health, who was responsible for appointments to this office, protested to Senator Hughes that Dr. Sloan's health was such that he could not perform the duties of the office. The Senator, however, threatened to have the appropriation cut off unless Dr. Sloan were given the appointment. Dr. Wyman, after much insistence, yielded, and made the appointment, although it was his judgment that Dr. Sloan was physically unfit to do the work. Dr. Sloan drew the salary of $375 per month from January 1, 1934, for a period of six months, and thereafter a salary of $300 per month until his death on the 23d day of March, 1936. During this period he was frequently absent from the office on account of his health and was not there at all during the last several months. His office was provided with a cot especially for his use when he needed rest while at the office. He was protected from every unusual exertion as far as possible by his assistants. His principal assistant was a trained nurse, who had had much experience in public health work, and had been in charge of the office before Dr. Sloan's appointment. By reason of her experience she was able to render valuable assistance. Notwithstanding these precautions for the protection of the health of Dr. Sloan, it was the opinion of competent physicians who testified in the cause that his life would have been prolonged, though he could not have been cured, if it had been possible for him to have relaxed and rested instead of assuming the activities and responsibilities of the office.

It is my conclusion that it has been proved by the greater weight of the evidence that after the summer of 1931, Dr. Sloan was not able to follow any substantially gainful occupation without serious injury to his health; that he worked when he was not able to work; that that work aggravated his diseases and hastened his death. It is my opinion, therefore, that Dr. Sloan was totally and permanently disabled within the definition of those terms as early as the summer of 1931.

Judge Parker in the case of Carter v. United States, 49 F.(2d) 221, 223 (C.C.A. 4th), in defining what constitutes "total and permanent disability," said: "The mere fact that a claimant may have worked for substantial periods during the time when he claims to have been permanently and totally disabled is not conclusive against him. The question is not whether he worked, but whether he was able to work, i. e., whether he was able to follow continuously some substantially gainful occupation without material injury to his health. Of course, the fact that a man does work is evidence to be considered by the jury as tending to negative the claim of disability; but the fact that he works when physically unable to do so ought not defeat his right to recover if the jury finds that such disability in fact existed. In the case of tuberculosis the patient is notoriously able to carry on for a while and do a substantial amount of work, but in most cases the attempt to carry on results in an aggravation of the disease frequently ending in the death of the patient. 'To say that the man who works, and dies, is as a matter of law pre-

cluded from recovery under the policy, but that one who following the advice of his physician refrains from such work, and lives, is entitled to recovery, presents an untenable theory of law and fact, and emphasizes the necessity for a determination upon the facts in each case whether the man * * * was able to continuously pursue a substantially gainful occupation.'"

This case has been cited with approval in United States v. Lawson, 50 F.(2d) 646, 651 (C.C.A.9th); Nicolay v. United States, 51 F.(2d) 170, 172 (C.C.A.10th); United States v. Seattle Title Trust Company, 53 F.(2d) 435, 436 (C.C.A.9th); Madray v. United States, 55 F.(2d) 552, 554 (C.C.A.4th); Bartee v. United States, 60 F.(2d) 247, 250 (C.C.A.6th); Storey v. United States, 60 F.(2d) 484, 486, 487 (C.C.A.10th); United States v. Messinger, 68 F.(2d) 234, 235 (C.C.A.4th); United States v. Caldwell, 69 F.(2d) 200, 202 (C.C.A.3rd); United States v. Kane, 70 F.(2d) 396, 397 (C.C.A.9th); United States v. Brown, 72 F.(2d) 608, 610 (C.C.A.10th); Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 276, 78 L.Ed. 492, 499.

In the Brown Case, supra, the facts were similar to the facts here. In that case the court said:

"The United States contends that Brown's work record refutes the claim of total and permanent disability. Employment may be of such a nature and duration that it conclusively refutes any idea of total and permanent disability. On the other hand a person who is incapacitated to work, impelled by necessity and aided by a strong will, may engage in work that aggravates his condition and hastens his death. See Nicolay v. United States (C.C.A.10) 51 F.(2d) 170, 172, 173; United States v. Phillips (C.C.A.8) 44 F.(2d) 689, 691; Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 78 L.Ed. 492:

"One who has a serious and incurable ailment, for which rest is the recognized treatment and which will be aggravated by work of any kind, is nevertheless totally and permanently disabled, although he may for a time engage in gainful employment. One so incapacitated may only work at the risk of injury to his health and danger to his life."

The Supreme Court of the United States in the Lumbra Case, supra, cited the Carter Case in support of the following statement of the law: "The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life."

Counsel for the defendant have called my attention to the case of United States v. Diehl, 62 F.(2d) 343 (C.C.A.4th) as a modification by Judge Parker of his pronouncement in the Carter Case. The Diehl Case does not modify the opinion of the Court in the Carter Case. The Diehl Case holds that general statements of liability to work may be so contradicted by physical facts as to be without probative force. It affirms rather than modifies the previous decision of the same Court that work done by the insured which results in substantial injury to his health does not prevent his being properly classified as totally and permanently disabled.

In the case at bar it was shown that Dr. Sloan not only endangered his health and life, but actually impaired his health and shortened his life by the work which it was necessary for him to do in order to gain a support for himself and family. One of the witnesses, Dr. Frank Lander, gave as his opinion that the work killed him.

Under the terms of the policy, benefits are not payable for a period of more than six months prior to the date of the filing of due proof. Though Dr. Sloan became totally and permanently disabled in the summer of 1931, plaintiff is not entitled to recover for any period before November 25, 1931, that is, six months prior to the date of the filing of the proof.

The plaintiff in her complaint prays judgment in her favor, as executrix, for installments of insurance and refund of premiums from November 25, 1931, that is, six months prior to the date of the filing of proof of total permanent disability, until February 25, 1936, the last monthly due date prior to the death of the insured; and for judgment in her own right, as beneficiary, for the balance of the insurance values in the policy. The defendant contends that if the court should find that the insured became totally and permanently disabled at the time alleged, that, nevertheless, installments of insurance and refund of premiums not paid to the insured during his lifetime are not now payable to his estate under the terms of the policy and that the beneficiary in

that event would be entitled to the full amount of the insurance, that is, $10,000, in a lump-sum payment, and to refund of premiums. When this issue was made, attorneys for the plaintiff stated that for the purposes of this case, they would accede to the contention of the defendant, withdraw their demand for judgment in favor of the plaintiff, as executrix of the estate of the insured, and pray for a judgment in her favor, in her own right, as beneficiary, for the entire amount of the insurance due under the policy and for refund of premiums. This is in accord with the decision of the Ninth Circuit Court of Appeals filed June 21, 1937, in United States of America v. Jessie B. Boshart, as Administratrix of the Estate of Amaniuel Boshart, deceased, 91 F. (2d) 264.

■ On motion of Edward H. Ninestein, Esq., and Messrs. Mays and Featherstone, attorneys for the plaintiff, it is ordered that the plaintiff, Emma Merrick Sloan, in her own right, as beneficiary, have judgment against the defendant for the sum of $10,000 and for refund of all premiums paid on the said policy after November 25, 1931.

The court finds that 10 per cent. of the amount of the respective judgments is a reasonable amount to allow to plaintiff's attorneys, divisible in equal shares between the two firms, as their fees for the prosecution of this action. Therefore, it is further ordered that defendant pay to Edward H. Ninestein, of Walhalla, S. C., and to Mays & Featherstone, of Greenwood, S. C., respectively, 5 per cent. each of the amount of the said judgment and that said payments be charged against said judgment.